**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

DON COOK                                                                                                          PLAINTIFF
ADC #135485

V.                                               NO: 5:15CV00068 PSH

ESTELLA BLAND *et al*                                                                                     DEFENDANTS

## ORDER

### I. Relevant facts

Plaintiff Don Cook, an Arkansas Department of Correction (ADC) inmate, filed a *pro se* complaint on February 27, 2015.[1] Cook filed an amended complaint on August 7, 2015, and a second amended complaint and exhibits on September 21, 2015. Cook named as defendants Advanced Practice Registered Nurse (APRN) Estella Bland and William Warren, a physician. Cook's claims against Warren were dismissed without prejudice on January 21, 2016. Doc. No. 59.

According to Cook, he was sent to the ADC's Cummins Unit in October of 2013 after a hospital stay following an assault at another unit. Cook claims he arrived at the Cummins medical ward for treatment with a broken nose and jaw, head fractures, and cuts. Cook asserts that he continued to have pain, as well as vision and neurological problems, after his release to general population. He asserts that despite these medical problems, every time he sought medical care, he saw Bland, who became angry and disrespectful, and made it clear she had no plans to do anything else to help him. Doc. No. 15.

Cook's deposition testimony more specifically identifies his claims against Bland. He claims

---

[1] This claims in this lawsuit were originally part of *Cook v. Moore et al*, ED/AR No. 5:14CV00402, but were severed from the original case and opened as a separate case.

Bland violated his constitutional rights when she did not renew prescriptions for a shower chair and a non-wool blanket on January 23, 2014, and that she exhibited unprofessional conduct toward him during a medical visit on February 25, 2015. Doc. No. 72-2, pages 31-33 & 47-48. Cook claims he needed a shower chair because he had difficulty standing in the shower, and a non-wool blanket because wool "breaks [him] out." Doc. No. 72-1, page 11, Doc. No. 72-2, page 39.

On July 5, 2016, Bland filed a motion for summary judgment, a brief in support, and a statement of facts on the merits of the case. Doc. Nos. 70-72. Cook filed a response on July 8, 2016, and Bland filed a reply on July 15, 2016. Doc. Nos. 74 & 75. For the reasons set forth below, the Court grants the motion.

## II. Standard of review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the

outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Cook essentially alleges that Bland violated his constitutional rights by denying him adequate medical care. The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To succeed on an inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). However, "'[g]rossly incompetent or inadequate medical care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment.'" *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

**Shower Chair/Non-wool Blanket Prescription Claims**

Cook contends Bland denied him prescriptions for a shower chair and a non-wool blanket on January 23, 2014, in deliberate indifference to his serious medical needs. The medical records provided by Bland in support of her summary judgment motion indicate that Cook's treating physician, Dr. William Warren, saw Cook for hypertension on January 21, 2014, two days before

he was seen by Bland in the complained-of visit. In his clinic notes from that visit, Dr. Warren indicated that Cook "has scripts for non-wool blanket, use of tennis shoes for medical purposes: these are not warranted."[2]  Doc. No. 72-1, page 4.  There was no mention of a shower chair prescription.[3]

At sick call on the following day, Cook told the staff medical provider that his non-wool blanket, shower chair, and tennis shoe prescriptions needed to be renewed.[4] He stated his vision was still blurry after being assaulted and "the nerves in his neck jump" and were painful. *Id.*, page 10. It was noted that Cook had a non-wool prescription that was good until April 21, 2014, but that the shoe and shower chair prescriptions were terminated "8/13." He was referred to "provider" for evaluation of neck pain. *Id.*

Cook was seen by Bland the next day, January 23, 2014. Bland's notes from that visit state that Cook "presents with requests for multiple items: shower chair, tennis shoes, non-wool blanket. He states that he has difficulty standing in the showers and neck pain related to the position that he has to take watching television or to write. He can't lay on the lt.side of his head without feeling pain...." *Id.*, page 11. Bland's examination appears to address his varied complaints and requests. She evaluated Cook's neck, remarking he had full range of motion and no recent injury. She

---

[2]Cook does not assert any claims related to prescriptions for use of tennis shoes for medical purposes.

[3]It is unclear from a review of the medical records when prescriptions for a shower chair and non-wool blanket were issued or by whom. The record suggests, however, that they were issued by a previous facility in which Cook was housed. The parties agree that both prescriptions were active when Cook saw Bland on January 23, 2014, although the records contain some discrepancies about that. Cook argues that he needed a new shower chair prescription because Cummins would not have recognized the prescription from another unit. Doc. No. 72-2, pages 33-34.

[4]The provider Cook saw on this visit is not named as a defendant in this case.

reviewed a November 2013 X-ray. She documented a normal exam. She also did "wool patch testing," with negative results. Finally, Bland examined Cook's feet, finding no structural abnormalities or lesions, even nails, intact pulses, and good range of motion. *Id*. Bland explained the medication and treatment plan in place to Cook. She informed Cook "that Dr. Warren has already told him on that non-wool blankets, shower chairs, and prescribed footwear are not medically indicated.... He was informed that his skin test for wool allergy was negative and that he may use any blanket issued by the state." *Id.*

During Cook's deposition, he testified that the first barracks to which he was assigned at Cummins had no shower chair, but "a couple of months down the road," he was transferred to a barracks with a built-in shower chair. Doc. No. 72-2, page 35. During the time that he was required to shower without a chair, he was able to lean against a wall to steady himself, did not fall, and did not suffer any injury. *Id.*, pages 36-37.

Concerning the non-wool prescription, Cook maintains he is sensitive to wool, despite the allergy test results. He testified in his deposition, however, that he was never exposed to wool at Cummins, and no one required him to accept a wool blanket. Doc. No. 72-2, page 38. Moreover, Cook stated he had bedsheets on his bed, and also a sweatsuit he could wear for warmth if needed. Doc. No. 72-2, page 40.

In addition to the medical records and Cook's deposition testimony, Bland relies on an affidavit from Dr. Robert Floss, Associate Regional Medical Director of Correct Care Solutions, LLC. Dr. Floss oversees administration of medical services for the ADC's facilities. See Doc. No. 72-3. He opines that the medical decisions made by Bland on January 23, 2014 were within the applicable standard of care.

Bland has offered evidence supporting a finding that she did not know of and deliberately disregard a serious medical need. To the contrary, the evidence she relies on indicates that she addressed Cook's requests and made medical findings consistent with her examinations and the standard of care. Additionally, she has offered Cook's testimony, which establishes he has suffered no injury as a result of her refusal to extend the shower chair and non-wool blanket prescriptions. In the face of medical records documenting treatment was provided and expert opinion indicating the care given was adequate, an inmate cannot create a factual dispute simply by asserting he did not receive proper treatment. *See Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 2997). Cook's response to the motion for summary judgment fails to set forth specific facts showing there is a genuine issue for trial.[5] *See Ghane v. West*, 148 F.3d 979, 981 (8th Cir. 1998). There is no constitutional violation.

**Unprofessional conduct**

Cook also claims that Bland was unprofessional at a February 25, 2014 examination. Doc. No. 72-2, page 47-48. A review of the medical records indicates that Cook presented with a request for a CT or MRI of the head. Bland's notes states that Cook "presented before he was asked why it is that he feels a nuclear scan was indicated, by telling this provider–'I have spoke c my people, lawyers and such. They told me to tell you that I am filing a lawsuit against the state and the infirmary. He continued to talk about his 'lawsuit' and not the nature of his sick call request. He was dismissed from this encounter:" Doc. No. 72-1, page 24. Bland also documented that Cook

---

[5] Bland urges the Court to accept her statement of undisputed facts as true because Cook did not file a statement of disputed facts as required by Local Rule 56.1. The Court accepts Cook's response as containing a statement of disputed facts. Even so, however, the Court finds that Cook's response fails to create a genuine issue of material fact.

"was informed that the purpose of the sick call encounter is to discuss and plan care for his health care needs and not to discuss his 'pending lawsuits.' He was encouraged to place a sick call and then utilize that time to find solutions for his health care needs." *Id.*  Cook did just that, and approximately 1 1/2 hours after this encounter, he was examined by Dr. William Warren, and was referred to an opthalmologist for evaluation of visual discomfort. *Id.*, pages 25-26.  Doc. No. 72-2, pages 47-48.  Dr. Warren thus addressed Cook's medical needs at that time.  Doc. No. 72-1, pages 24 & 25.

Even if the Court were to assume Bland treated Cook in an unprofessional manner, unprofessional conduct alone is not a constitutional violation. *See McDowell v. Jones*, 990 F. 2d 433, 434 (8th Cir. 1993)(inmate's claims of harassment not generally actionable under § 1983). *See also Kendrick v. Faust*, 682 F.Supp. 2d 932, 944 (E.D. Ark. January 6, 2010)(verbal abuse and threatening language by prison officials may be unprofessional, but are not unconstitutional); *Stevenson v. Meredith*, 2016 WL 447420 at *2 (C.D. Ill. February 4, 2016)(constitution does not create a cause of action for unprofessional behavior).

Additionally, Bland referred Cook to see Dr. Warren the same date that she allegedly treated him unprofessionally, and he received treatment within a short time period.  Bland's actions do not support a finding of deliberate indifference to a serious medical need.  Cook's response fails to create a genuine issue of material fact in this regard.  Accordingly, Bland is entitled to summary judgement.

## IV. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Defendant Estella Bland's motion for summary judgment is GRANTED, and plaintiff

Don Cook's complaint is DISMISSED.  Doc. No. 70.

2. Cook's complaint is DISMISSED WITH PREJUDICE with respect to his claims against Bland.

3. The Court certifies that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 7th day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE